IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Elijah Idris, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 6271 |
| | ) | |
| Officer John Conway, Officer William Moriarty, | ) | Judge Virginia M. Kendall |
| and the City of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elijah Idris brought the instant three-count Complaint on August 9, 2012, alleging that Defendants Officer John Conway, Officer William Moriarty, and the City of Chicago violated his civil rights pursuant to 42 U.S.C. § 1983. (Dkt. 1). Specifically, Idris contends that the Defendants (1) committed an unreasonable seizure of his person; (2) used excessive force in effectuating his arrest; and (3) pursued a malicious prosecution in violation of Illinois law, thereby depriving Idris of his rights and privileges guaranteed by the Constitution of the United States in connection with an incident occurring at O'Hare airport. The Defendants now move for summary judgment. For the following reasons, the Defendants' motion is denied with respect to Counts I and III of the Complaint, but granted as to Count II.

## FACTS[1]

The following facts are undisputed unless otherwise noted. As a preliminary matter, the Defendants' argument in their Reply brief that Idris fails to set out any material issue of fact because he cites to inaccurate evidence in the record is unavailing. Although a number of Idris'

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to the Defendants' Statement of Materials Facts have been abbreviated to "Def. 56.1 St. ¶ _"; citations to the Plaintiffs' Statement of Additional Facts have been abbreviated to "Pl. 56.1 St. ¶ _."

responses and additional statements of fact point to evidence that is not explicitly opposite of the Defendants' contentions, these responses create the appearance of two different versions of the incident. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (where material facts specifically averred by nonmoving party contradict facts averred by party moving for summary judgment, motion must be denied). The fact that certain of these responses are not found in an affidavit submitted by Idris or exactly replicated in his deposition does not prevent the Court from recognizing the reasonable inference that disputed material events exist.[2] Moreover, these responses and additions are based on personal knowledge that Idris would be able to testify to at trial. Therefore, this Court will not ignore these statements.

### *Parties Involved*

Idris is a 41 year-old African-American massage therapist living in Chicago, Illinois. (Def. 56.1 St. ¶ 5; Pl. 56.1 St. ¶ 1). Previously, Idris worked as a ramp agent for two airlines at O'Hare Airport. (Def. 56.1 St. ¶ 6). Idris has familiarity with routine arrest procedures, including handcuffing practices, and has been arrested for disorderly conduct in the past. (*Id.* at ¶ 7). Idris acknowledges that tension exists due to his earlier encounters with the Chicago police. (*Id.* at ¶ 8). Officers Moriarty and Conway are police officers employed by the Chicago Police Department ("CPD"). (*Id.* at ¶ 3). Moriarty has been a Chicago police officer for 24 years and has been assigned to O'Hare for approximately five years. (*Id.* at ¶ 9). Conway has been a Chicago police officer for over 19 years and has been detailed to O'Hare since 2010. (*Id.* at ¶ 10).

On the day of the incident, January 3, 2012, Moriarty and Conway were part of a tactical team tasked with patrolling O'Hare for unlawful activity, including baggage theft. (*Id.* at ¶ 11).

---

[2] Self-serving written statements are perfectly admissible evidence through which a party can present its side of the story at summary judgment. *See Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013).

The Officers were patrolling for baggage thieves because airlines had reported incidents of baggage theft. (*Id.* at ¶ 12). While on baggage theft patrol, the Officers were in plain clothes, off the radio, and on the lookout for unusual behavior at the baggage claim areas. (*Id.* at ¶ 13). On this particular day, Moriarty was monitoring baggage claim carousels four and five. (Def. Resp. to Pl. 56.1 St. ¶ 3).

### *Officers' Encounter with Idris*

On January 3, 2012, Idris landed at O'Hare's Terminal 3 at 2:45 PM, returning from a trip to Las Vegas, Nevada. (Def. 56.1 St. ¶¶ 15, 17). Idris was out late the night before and had only slept for two hours. (*Id.* at ¶ 16). Idris' luggage consisted of a white messenger carry-on bag and a dark, rolling suitcase which he had checked. (*Id.* at ¶ 18). After deplaning, Idris remained in the terminal for twenty minutes while he charged his phone and made calls. (*Id.* at ¶ 19). Idris did not rush to collect his checked luggage because he knew the airline employees removed unclaimed bags and took them to their office. (*Id.* at ¶ 20). Idris proceeded to collect his suitcase from the airline office after it had been removed from the carousel. (*Id.* at ¶ 21). Idris then began the walk towards the Chicago Transit Authority ("CTA") Blue Line, a mass-transit train system between O'Hare and downtown Chicago, located within the airport. (*Id.* at ¶ 22). Conway was patrolling near the CTA platform while Moriarty was monitoring the baggage claim area in Terminal 3. (*Id.* at ¶ 23).

Idris initially caught Moriarty's attention in the baggage claim area because he had not seen Idris approach from the area where travelers normally originate. (*Id.* at ¶ 24). In Moriarty's experience, individuals who carry dirty bags are usually not airline passengers, however, the parties dispute Idris' appearance. (*Id.* at ¶ 26). The Officers claim that Idris was disheveled, unkempt, dirty, and that his white bag was old and dilapidated while the rolling suitcase was

much newer. (*Id.* at ¶ 25).Idris maintains that he was neither unkempt not dirty, was wearing jeans and a fleece jacket, and that his white bag was not dirty. (Pl. 56.1 St. ¶¶ 5-6). Moriarty began following Idris down an escalator and contends that Idris repeatedly looked back in his direction. (Def 56.1 St. ¶ 27). In the past, Moriarty had experienced incidents where individuals would steal bags, go to the bathrooms en route to the CTA platform, and riffle through the luggage. (*Id.* at ¶ 29; Def. Resp. to Pl. 56.1 St. ¶ 8). After observing Idris, Moriarty called Conway and told him that Idris may have stolen a bag but that he did not see Idris take anything from the carousel. (Def. 56.1 St. ¶ 30; Pl. 56.1 St. ¶ 9). Moriarty also provided a description of Idris. (*Id.*).

As Idris stepped on a moving walkway heading towards the CTA platform, Moriarty called out to him but Idris does not remember hearing anything. (Def. 56.1 St. ¶¶ 31-33). The first time Idris noticed any officer was when Moriarty grabbed his shoulder and said "you stole this luggage." (*Id.* at ¶¶ 34-35; Pl. 56.1 St. ¶ 11). Conway approached from the opposite end of the walkway. (Def. 56.1 St. ¶ 36). The parties dispute whether Conway displayed his CPD identification at this time. Conway asked Idris to provide identification and questioned whether the rolling luggage belonged to him. (*Id.* at ¶ 38). Idris asked the Officers how they determined he stole his luggage and asked "what's going on?" and "what's the problem?" (Pl. 56.1 St. ¶ 11). The parties dispute the level of hostility shown by Idris, but agree that Idris told the Officers he could provide his identification after exiting the moving walkway and that Idris went with the Officers willingly to an area near an elevator bank whether they would not impede foot traffic. (Def. 56.1 St. ¶¶ 39, 44; Pl. 56.1 St. ¶ 12). The Officers state that Idris relentlessly questioned the Officers, raised his voice, swore at the Officers, and was loud and combative throughout. (Def. 56.1 St. ¶¶ 40-43, 46). Idris maintains that he was upset by being detained for what he found to

be no apparent reason, but that he did not throw his bags to the ground or wave his arms and make fists, nor was he aggressive towards the Officers. (Pl. 56.1 St. ¶¶ 18, 20). Idris admits to saying "this is bullshit" during the sequence of events, but contends it was in response to the Officers swearing. (*Id.* at ¶ 19; Pl. Resp. to Def. 56.1 St. ¶ 43).

Idris spoke with the Officers for two to three minutes and showed them his identification, boarding pass, hotel receipt, and bag tag. (Pl. 56.1 St. ¶ 13). The Officers determined that the dark rolling luggage was not stolen. (*Id.* at ¶ 16). During the interaction near the elevator bank, a group of people converged around Idris and the Officers, but the parties dispute the number of people present. (Def. 56.1 St. ¶ 48). Officer Michael Crooker, an assisting officer on scene, stated that Idris was "explosive" and his behavior was "alarming," while Idris holds that he never made any threatening movements toward the Officers. (*Id.* at ¶ 49). Crooker believed that Idris was attempting to draw the group of people into the situation. (*Id.* at ¶ 50). Officer Jack Pasquale also stated that Idris was uncooperative. (*Id.* at ¶ 55). Conway then radioed for uniformed officer back-up and Idris was arrested for disorderly conduct. (*Id.* at ¶¶ 51-52; Pl. 56.1 St. ¶ 17).

### *The Officers Handcuff Idris*

In effectuating the arrest, Conway placed handcuffs on Idris' right wrist in front of Idris' body and then pulled Idris' right arm behind his back to cuff his left wrist, which Idris described as "awkward." (Def. 56.1 St. ¶ 54). Idris complained about the tightness of the handcuffs immediately after being cuffed. (*Id.* at ¶ 55). Idris was placed in a squad car to be taken to the O'Hare police station approximately two to five minutes away, during which he complained about the handcuffs again. (*Id.* at ¶ 56). Upon arriving at the station, Idris complained about the tightness of the handcuffs for the third time and Conway removed the handcuff from Idris' right wrist and cuffed him to a bench. (*Id.* at ¶ 57). After paperwork was completed at the O'Hare

station, Idris was transferred to the 16th District police station in handcuffs. (*Id.* at ¶ 62). In total, Idris' right wrist was handcuffed for approximately sixty minutes. (*Id.* at ¶ 65).

Idris claims that as a result of the handcuffing procedure, he suffered an injury to his right arm. (*Id.* at ¶ 67). Idris had bruising and swelling for a period of time after the arrest, and the injury took the form of a contusion five inches above his wrist four days after the arrest. (*Id.* at ¶¶ 69-70). Idris waited six days after the arrest before seeking medical treatment at Stroger Hospital, where his January 9, 2012 medical records reflect that Idris indicated wrist pain and swelling and that the incident had occurred at home. (*Id.* at ¶¶ 71-72). Idris was ultimately diagnosed with a contusion, prescribed Ibuprofen, and discharged. (*Id.* at ¶ 74).

### Criminal Complaint

After the arrest, Officer Crooker returned to the site of the arrest to see if there were any witnesses who wanted to sign a complaint against Idris. (*Id.* at ¶ 60). Officer Conway had prepared the criminal complaint form. (Dkt. 41-4, Conway Dep. P. 91). Crooker spoke with Victor Aponte, a CTA employee who was present at the arrest scene. (*Id.* at ¶ 61). The officers present never spoke to Aponte until after the arrest was made. (Pl. 56.1 St. ¶ 36). Aponte did not see Idris on the moving walkway. (*Id.* at ¶ 23). Aponte saw Idris only after he had stepped off the walkway and was with six to seven police officers. (*Id.* at ¶¶ 23-24). Aponte heard the officers tell Idris not to put his hands in his pockets. (*Id.* at ¶ 23). Aponte also heard Idris swearing and asking "what's going on?" (*Id.* at ¶ 24). The parties dispute the friendliness of the conversation, but agree that Aponte saw Idris move his arms as if to demonstrate confusion. (*Id.* at ¶ 25). Aponte did not see Idris wave his arms in the air with clenched fists nor did he remember seeing Idris throw his bags to the ground. (*Id.* at ¶¶ 26-27). Aponte was able to leave the area of the incident without any difficulties as the hallway was not blocked. (*Id.* at ¶ 30). Aponte was not

alarmed or disturbed by the incident nor was he put in fear of his own safety, but he also stated that he "see[s] this all the time." (*Id.* at ¶ 31; Def. Resp. to Pl. 56.1 St. ¶ 31). After leaving the area, Aponte proceeded to the CTA station approximately 25-30 feet away and did not hear either Idris or the officers yelling. (Pl. 56.1 St. ¶ 32). Later, an officer approached Aponte with a criminal complaint form and although Aponte never stated that he wanted to press charges against Idris, he signed the complaint. (*Id.* at ¶¶33-35; Def. 56.1 St. ¶ 61).

The criminal complaint stated that Idris "knowingly and intentionally became belligerent, throwing his bags to the ground while shouting profanities and waving his arms in the air with clenched fists, causing passengers and employees to back up in the pedestrian corridor and a crowd to gather in such an unreasonable manner as to alarm and disturb said passengers and employees, placing them in fear for their safety and provoke a breach of the peace." (Pl. 56.1 St. ¶ 39). The criminal complaint also listed a court date for February 29, 2012, but Moriarty and Conway did not appear, stating that they were never notified. (*Id.*; Def. 56.1 St. ¶ 66).

## LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). Whether a fact is material depends on the underlying substantive law that governs the dispute, and a genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citation omitted). If the moving party has properly supported its motion, the nonmoving party must come forward with facts that show there is a genuine issue for trial. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013). Where there are genuine disputes as to material facts, courts view those

facts in the light most favorable to the nonmoving party when deciding motions for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). And when deciding motions for summary judgment, courts do not weigh evidence or make credibility determinations because such considerations are for the jury. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011).

**DISCUSSION**

Idris' Complaint has three counts: Count I alleges a § 1983 claim for unreasonable seizure against the CPD Officers; Count II alleges a § 1983 excessive force claim against the CPD Officers; and Count III asserts a claim for malicious prosecution under Illinois law against all of the Defendants.

**A. Unreasonable Seizure**

To prevail under § 1983 for an unreasonable seizure claim, Idris must establish that the Defendants' conduct constituted a seizure and that the seizure was unreasonable. *Bielanski v. Cty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008). A seizure for Fourth Amendment purposes can be an "intentional limitation of a person's freedom of movement." *Id.* Although Idris did not label any of his counts as "false arrest," he did bring an unreasonable seizure claim. This claim encompasses both the Officers' conduct in their initial *Terry* stop of Idris and the subsequent arrest. *See, e.g., Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010) (illegitimate *Terry* stop can constitute unreasonable seizure); *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) (where an arrest occurs without probable cause, the plaintiff may bring a claim for unreasonable seizure) (citing *A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004)). In his Complaint, Idris alleges that his seizure by the Officers was "without any legal cause." Such a claim necessarily focuses

the reasonableness metric on the existence of an officer's probable cause to detain. *See Carlson v. Bukovic*, 621 F.3d 610, 622 n.19 (7th Cir. 2010).

### 1. Initial *Terry* Stop

Idris first claims that Officers Moriarty and Conway violated the Fourth Amendment when they initially approached him and accused him of stealing the rolling luggage he was carrying. This argument is without merit. As Idris himself acknowledges, this initial inquiry amounted to no more than a *Terry* stop, which only requires a showing that the officers had reasonable suspicion to believe that a crime was about to be or had been committed. *See United States v. Carlisle*, 614 F.3d 750, 754 (7th Cir. 2010). The suspicious conduct may be ambiguous and susceptible to an innocent explanation, but the officers may still detain the individual to resolve such ambiguity. *See Illinois v. Wardlow*, 528 U.S. 119, 125-26 (2000).

When an officer conducts a *Terry* stop, he must be able to point to specific and articulable facts giving rise to the reasonable suspicion of criminal activity. *See United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010). This standard is "more than a hunch but less than probable cause" and determining whether an officer had reasonable suspicion is assessed considering the totality of the circumstances. *Id.* Officers may rely on their experience in evaluating the significance of the suspect's conduct. *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005).

The Officers provide numerous factors supporting their reasonable suspicion: (1) Officer Moriarty did not observe Idris arrive at the baggage claim at the same time as his fellow passengers; (2) Idris appeared disheveled and was dirty; (3) Idris was carrying mismatched luggage—one old, dirty messenger bag and a newer rolling suitcase; (4) Idris continued to look behind him as he left the baggage claim area; (5) initial attempts to speak with Idris were

unsuccessful; (6) Idris continued to distance himself from both the baggage claim area and Moriarty; and (7) Idris was headed toward the lower level in the direction of the CTA. Some of these contentions are disputed: Idris maintains that his physical appearance was neither unkempt nor dirty and that his messenger bag was in fine repair. But his attempts to summarily throw out the remaining factors as innocuous are ineffective. *See Wardlow*, 528 U.S. at 125-26 (officers may detain individuals to resolve ambiguity of conduct). Idris does not dispute that he arrived at the baggage claim late, looked behind him as he walked away, did not respond to Moriarty initially, or that he was heading to the lower levels of O'Hare toward the CTA. As Moriarty testified, baggage thieves commonly take stolen luggage to the lower-level bathrooms en route to the CTA and riffle through the bags to steal whatever property they want. (Def. 56.1 St. ¶ 29). Although all of the undisputed conduct is by itself lawful, it also suggested to Moriarty that Idris had stolen a bag. *See id.* at 126 (*Terry* accepts the risk that officers may stop innocent people); *see also United States v. Sokolow*, 490 U.S. 1, 2 (1989) (individual factors can be consistent with innocent travel but, when taken together, amount to reasonable suspicion); *United States v. Harris*, 188 Fed. Appx. 498, 500 (7th Cir. 2006) (otherwise-innocent behavior can add up to reasonable suspicion).

The proper analysis for reasonable suspicion is based on an objective standard that takes the totality of the circumstances into consideration. *See United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011) ("would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?") (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)); *see also United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006) (courts include the experience of the officer and the behavior and characteristics of the suspect in totality of the circumstances analysis). Considering the

undisputed facts listed above, the location of the events, Officer Moriarty's assignment at O'Hare for the past five years, and his experience in encountering baggage thieves, the Officers had reasonable suspicion and committed no Fourth Amendment violation in their initial *Terry* stop of Idris.

### 2. Arrest for Disorderly Conduct

Idris is on firmer ground, however, in contending that the Officers violated his Fourth Amendment rights during his subsequent arrest. A warrantless arrest satisfies the Fourth Amendment if supported by probable cause that the arrested individual committed a crime. *United States v. Freeman*, 691 F.3d 893, 899 (7th Cir. 2012) (citing *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The test is an objective one and evaluates whether probable cause existed on the facts as they appeared to a reasonable police officer, even if the reasonable belief of that officer is ultimately found to be incorrect. *Payne*, 337 F.3d at 776.

The Officers state that they had probable cause to arrest Idris for disorderly conduct. But here, disputed issues of material fact preclude summary judgment. Illinois law provides that "[a] person commits disorderly conduct when he or she knowingly (1) does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace[.]" 720 ILCS 5/26-1(a)(1); *see also Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 717 (7th Cir. 2013). Such a violation is a Class C misdemeanor. 720 ILCS 5/25-1(b). According to the Officers, as soon as they approached Idris at O'Hare and identified themselves, Idris began yelling "fuck you I don't have to show shit." The Officers' arrest report also states that Idris threw his bags to the ground, flailed his arms in the air with closed fists, and continued to shout profanities causing a

crowd to gather which interrupted the flow of pedestrian traffic. *See, e.g.*, Pl. 56.1 St. ¶ 38. Idris'
account of the events is drastically different. He denies taking any aggressive or unreasonable
actions toward the Officers. Rather, Idris maintains that he remained calm when initially
approached by the Officers, offered to provide identification when he got off the moving
walkway, went willingly with the officers to prove he did not steal his bag, did not throw his
bags to the ground, and did not wave his fists in the air. *See, e.g.*, Pl. 56.1 St. ¶¶ 11, 12, 18, 20.

Regarding the profanities, Idris admits he said "this is bullshit" during the course of the
stop. But Illinois courts have consistently held that arguing with a police officer, even if done
loudly, or with profane or offensive language, will not in and of itself constitute disorderly
conduct. *See Payne*, 337 F.3d at 777 (citing *People v. Trester*, 96 Ill. App.3d 553 (1981); *People
v. Justus*, 57 Ill. App.3d 164 (1978); *People v. Gentry*, 48 Ill. App.3d 900 (1977); *People v.
Douglas*, 29 Ill. App.3d 738 (1975); *City of Chicago v. Blakemore*, 15 Ill. App.3d 994 (1973)).
Furthermore, arguing with a police officer does not evolve into disorderly conduct merely
because a crowd gathers to watch the argument. *Payne*, 337 F.3d at 777 (citing *Justus*, 57 Ill.
App.3d at 167). Even if mere use of profanities and strong language were a potential basis for
arrest for disorderly conduct, the Officers still would not be entitled to summary judgment, for
disputed issues of fact exist as to what precisely Idris said, the frequency with which he swore,
and his volume when speaking.

Moreover, Idris' version of the events is at least partially corroborated by Aponte's
testimony. The Officers' contention that they had probable cause because Aponte signed the
criminal complaint is unconvincing because they did not receive any information from Aponte
before making the arrest. Although Aponte signed the complaint, he testified that while he heard
Idris swear, he did not see Idris wave his arms in the air with clenched fists nor did he recall Idris

throwing his bags to the ground. Further, Aponte testified that he left the area without incident, was not put in fear of his own safety, and did not hear any yelling once he arrived at the CTA station 25-30 feet away. *See, e.g.*, Pl. 56.1 St. ¶¶ 26-27, 30-32. In short, there are questions of material fact regarding not only Idris' conduct and behavior leading up to the arrest, but also concerning the demeanor of the crowd and the threat to public order. *See, e.g., Kies v. City of Aurora*, 156 F. Supp.2d 970, 985 (N.D. Ill. 2001) (dispute over the threat to public order precluded a determination of whether plaintiff's actions threatened a breach of the peace, therefore precluding summary judgment).

It is without doubt that the officers present at the scene summarily described Idris as "aggressive," "alarming," and "explosive." But at the summary judgment stage, this Court must credit Idris' version of the facts in which he unequivocally denies that he waved his fists in the air, threw his bags to the ground, or acted aggressively towards any of the police present. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) (a court is obliged to accept non-movant's version of events on summary judgment). Idris, like the Officers, has personal knowledge of what occurred during the encounter, and the conflicting depictions of the incident will boil down to a credibility determination appropriate only for a jury. *See Omnicare*, 629 F.3d at 704-05. Viewing the record in the light most favorable to Idris, a reasonable jury could find that the Officers lacked probable cause to arrest Idris for disorderly conduct.

The Officers argue that even if they lacked probable cause to arrest Idris, they are entitled to qualified immunity for their conduct. Defeating qualified immunity requires (1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a "reasonable official would understand that what he is doing violates that right." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987)). In the context of a § 1983 unreasonable seizure claim, an arrest without probable cause is a violation of a constitutional right, whereas an arrest without arguable probable cause is a violation of a "clearly established" constitutional right, thereby precluding qualified immunity. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). For the reasons outlined above, when Idris' version of events is credited and the evidence is viewed in the light most favorable to Idris, a jury could reasonably conclude that it was objectively unreasonable for the Officers to believe that they had probable cause to arrest Idris for disorderly conduct. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n. 13 (7th Cir. 2003) (when the facts within an officer's knowledge at the time of an arrest are a matter of dispute between the parties, summary judgment on the basis of arguable probable cause is inappropriate). Accordingly, a triable issue of fact remains as to whether the Officers' unreasonably seized Idris.

### B. Excessive Force

Idris bases his excessive use of force claim exclusively on his allegations that the handcuffing procedure was "awkward" and that he complained to the Officers that his handcuffs were too tight on three occasions. Claims that police officers used excessive force during an arrest are evaluated under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry*, 392 U.S. at 20-22)). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Additionally, this Court's conclusion that a reasonable jury could find that the Officers did not

have probable cause to arrest has no bearing on the excessive force claim. A seizure without probable cause is conceptually different from a seizure that employs excessive force; both are unreasonable, but for different reasons. *See, e.g., Carlson*, 621 F.3d at 622 n. 19 (7th Cir. 2010); *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) (distinguishing between Fourth Amendment unreasonableness based on lack of probable cause and excessive force in the exclusionary rule context); *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009) (statement that "any amount of force used to effect an arrest without probable cause is *per se* excessive" is incorrect); *Snell v. City of York, Pa.*, 564 F.3d 659, 672-73 (3d Cir. 2009) (rejecting "efforts to bootstrap excessive force claims and probable cause challenges"); *Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir. 2006) (reasonableness test enunciated in *Graham* remains the applicable test for excessive force, including those cases where officers allegedly lack probable cause to arrest); *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) (establishing a lack of probable cause to make an arrest does not establish an excessive force claim).

Valid excessive force claims have occasionally been recognized based on overly tight handcuffs. *See, e.g., Payne*, 337 F.3d at 774-75, 781 (summary judgment was inappropriate when there was evidence that the arresting officers handcuffed the plaintiff so tightly she lost feeling in her hands and refused to loosen the cuffs after learning of the numbness and the plaintiff ultimately needed two carpal tunnel surgeries); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1043-44 (7th Cir. 2002) (plaintiff was entitled to a jury trial on excessive force claim where evidence showed that arresting officer lacked probable cause for the arrest, shoved her to the ground even though she was not resisting, cracked her tooth by forcing a breath-screening device into her mouth, waited an hour to loosen handcuffs she complained were too tight, and subjected her to blood and urine testing at a hospital even though she had passed field sobriety

tests); *Lester v. City of Chicago*, 830 F.2d 706, 714 (7th Cir. 1987) (reasonable jury could find excessive force if it believed plaintiff's testimony that even though she did not resist arrest, officers threatened to punch her, kneed her in the back, dragged her down a hallway, and handcuffed her so tightly her wrists were bruised); *Brown v. Vill. of Evergreen Park*, No. 02 C 0236, 2002 WL 31844991, at *4 (N.D. Ill. Dec. 18, 2002) (plaintiff's allegations that he was pushed against a police car, had his head jammed against the hood of the car, and was handcuffed so tightly he suffered nerve damage precluded dismissal of excessive force claim).

But Idris' complaints do not rise to that level. Here, although Idris complained three times regarding the tightness of his handcuffs, he gave the Officers no indication of the degree of pain, experienced minimal injury in the form of a contusion for which he was prescribed Ibuprofen, and did not seek medical care until six days after the handcuffing. These circumstances are far more akin to those found in cases where summary judgment was granted. *See e.g., Sow v. Fortville Police Dep't.*, 636 F.3d 293, 304 (7th Cir. 2011) (summary judgment appropriate where plaintiff provided no elaboration to officer after complaining once that handcuffs were too tight, plaintiff did not complain of any injury when he was taken to jail, and did not receive any medical treatment); *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009) (officers did not use excessive force against plaintiff when they placed his arms behind his back and kept him handcuffed for approximately twenty minutes, even though plaintiff told officers that he did not want to be handcuffed because he thought it would hurt, complained more than once generally about pain after he was handcuffed, and suffered two torn rotator cuffs which required surgery, because officers were not informed of any preexisting condition); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (excessive force plaintiff could not survive summary judgment where he complained to the officers once about his handcuffs without

elaborating on any injury, numbness, or degree of pain, he was handcuffed for about thirty minutes, and he neither sought nor received medical care); *Brunson v. City of Chicago*, No. 11 C 02011, 2013 WL 870521, at *4-5 (N.D. Ill. Mar. 7, 2013) (police officers are not required to respond to generalized complaints that handcuffs are painful even when handcuffs are applied "as tightly as possible" and plaintiff complains more than once).

The record here indicates the following: Idris likely suffered some discomfort and pain from handcuffs that the Officers applied somewhat too tightly; he complained to the Officers three times about the handcuffs without elaborating on any injury, numbness, or degree of pain; he was handcuffed in total for about sixty minutes (approximately forty of which the Officers were present for); he experienced bruising and a contusion which appeared four days after the incident; and he sought medical care six days after the arrest, where he was prescribed Ibuprofen and discharged. The plaintiffs in *Herzog* and *Lester* experienced tight handcuffing similar to the discomfort that Idris alleges, "but the decisions in those cases were hardly based on overly tight handcuffs alone" and included additional injuries including a cracked tooth, gratuitous blood and urine testing, being kneed in the back, and being dragged down a hallway. *Tibbs*, 469 F.3d at 666 (citing *Herzog*, 309 F.3d at 1043-44; and *Lester*, 830 F.2d at 714). Based on the mild allegations found here, the Officers did not exercise excessive force and summary judgment is therefore warranted. Because this Court grants summary judgment as to this Count, it need not delve into a qualified immunity analysis regarding excessive force.

### C. Malicious Prosecution

Turning now to Idris' malicious prosecution claim under Illinois law, he must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of

probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (citing *Swick v. Liautaud*, 169 Ill.2d 504, 511 (1996)). The absence of any element bars a plaintiff from pursuing a malicious prosecution claim. *Swick*, 169 Ill.2d at 511. The Defendants argue that Idris' claim must fail for two reasons: (1) the Officers had probable cause to arrest Idris; and (2) Idris cannot demonstrate malice. Material issues of fact preclude summary judgment on this Count.

### 1. Probable Cause

This Court's analysis may be brief, as it is readily apparent that there are disputes of material fact as to the charges brought against Idris. As a preliminary matter, the fact that Aponte signed the criminal complaint does not establish probable cause because the charge of disorderly conduct was based on events that the Officers themselves witnessed rather than anything Aponte may have told the Officers. The Officers did not receive any information from Aponte on the scene, and in fact, Aponte signed a criminal complaint only after the arrest, when it was already filled out by the Officers. The cases cited by the Defendants for the proposition that a report from a credible eyewitness can provide the basis for probable cause all involved circumstances where police officers responded to events they did not personally witness. *See generally McBride v. Grice*, 576 F.3d 703 (7th Cir. 2009); *Woods v. City of Chicago*, 234 F.3d 979 (7th Cir. 2000); *Spiegel v. Cortese*, 196 F.3d 717 (7th Cir. 1999); *Gramenos v. Jewel Cos., Inc.* 797 F.2d 432 (7th Cir. 1986). Additionally, Idris has offered evidence to dispute the accuracy of the signed criminal complaint, as Aponte testified in his deposition that he did not see Idris raise his fists and does not remember seeing Idris throw his bags to the ground.

According to the Officers, Idris was unruly, combative, and a risk to the travelers at O'Hare. The Officers contend that Idris yelled profanity-laced tirades, waved his fists in the air,

and threw his luggage on the ground, all in an attempt to draw a forming crowd into the dispute. If this Court were to credit the Officers' account, there would be no doubt that these facts would supply ample cause for a charge of disorderly conduct. *See* 720 ILCS 5/26-1(a)(1) (a person commits disorderly conduct when he or she knowingly does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace). However, Idris disputes the Officers' recount of the events and specifically denies that he ever raised his fists, threw his bags, or acted unreasonably toward the Officers. On the contrary, Idris avers that he was cooperative at all times. This Court must credit Idris' account at this juncture. *See Payne*, 337 F.3d at 773. Assuming that Idris did not become aggressive toward the Officers, scream profanities, flail his arms in the air, or throw his bags to the ground, the Officers would have lacked any reasonable basis on which to believe that Idris had committed disorderly conduct.

### 2. Malice

In order to prove malice, Idris must allege more than a lack of probable cause; "rather, he must allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *McDade v. Stacker*, 106 Fed. Appx. 471, 475 (7th Cir. 2004). "Malice" in the context of malicious prosecution means that the officer who initiated the prosecution had "any motive other than that of bringing a guilty party to justice." *Williams v. City of Chicago*, 733 F.3d 749, 759-60 (7th Cir. 2013) (quoting *Aleman v. Vill. of Hanover Park*, 662 F.3d 897, 907 (7th Cir. 2011) (citation omitted)). Again, taking the version of disputed facts most favorable to Idris, a jury could reasonably find that the Officers concocted the narrative found in the criminal complaint and that it was unsupported by probable cause. The creation of a knowingly false

criminal complaint would satisfy the requirement of an additional improper act after Idris' arrest. *See, e.g., Holmes*, 511 F.3d at 683 (when an officer prepares a criminal complaint, "he typically will have more of an opportunity to reflect on the nature and ramifications of the accused's conduct than he did in making the arrest"); *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) (allegations that police officers submitted false charges contained in criminal complaints and false police reports was a claim for malicious prosecution rather than due process). Moreover, under Illinois law, it is well established that a jury can infer malice from an absence of probable cause. *Williams*, 733 F.3d at 760; *see also Aguirre v. City of Chicago*, 382 Ill. App.3d 89, 97 (2008).

Regarding the Officers' qualified immunity argument, the only question remaining for the Court is whether at the time of the incident it was clearly established that a police officer could not knowingly make a misstatement in a criminal complaint. The answer to that inquiry is in the affirmative. *See, e.g., Aleman*, 662 F.3d at 904, 907 (signed criminal complaint containing known misinformation precluded grant of summary judgment on malicious prosecution claim to police officer who prepared the complaint).

For these reasons, summary judgment is inappropriate on the malicious prosecution claim. The existence of probable cause to support the charge of disorderly conduct depends on whether Idris actually behaved the way that the Officers' contend he did. The factfinder must resolve whether it is Idris or the Officers who are telling the truth. To defeat summary judgment, all Idris is required to come forward with is evidence that would *permit* a finding of no probable cause and *permit* a reasonable inference of malice. This he has done. Summary judgment is therefore denied because a reasonable jury could find malice if it determines that the Officers slanted the narrative found in the criminal complaint.

## **CONCLUSION**

For the reasons stated herein, this Court denies the Defendants' Motion for Summary Judgment with respect to Counts I and III because there are genuine issues of material fact as to whether the Officers had probable cause to arrest Idris for disorderly conduct. Summary judgment is granted as to Count II because this Court concludes that the Officers did not use excessive force based solely on the mild allegations of an awkward handcuffing procedure and overly tight handcuffs found here.

_____ _Virginia M. Kendall_ ___
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 27, 2014