IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIJAH IDRIS, | ) |
| Plaintiff, | ) |
| v. | ) No. 12 C 6271 |
| OFFICER JOHN CONWAY, OFFICER WILLIAM MORIARTY, and THE CITY OF CHICAGO, | ) Judge Virginia M. Kendall |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elijah Idris sued Chicago Police Officers John Conway and William Moriarty and the City of Chicago, contending that the Defendants deprived him of his rights in violation of 42 U.S.C. § 1983 by falsely arresting and maliciously prosecuting him in connection with an altercation between the parties at O'Hare Airport.[1] (Dkt. No. 1.) Specifically, Idris alleged that the Defendants arrested him for disorderly conduct despite his cooperation with them throughout the course of their encounter. After a four-day jury trial in December 2014, the jury returned a verdict in favor of the Defendants on both of Idris's claims. (Dkt. No. 87.) The Court entered judgment on both claims on December 4, 2014.

Idris now moves the Court for a mistrial, arguing that the Defendants' closing argument was prejudicial and deprived him of a fair trial because it (1) improperly argued that the Court had already ruled that the Defendants' initial stop of Idris in O'Hare was lawful and (2) violated the Court's ruling barring reference to the Court's grant of summary judgment on Idris's *Terry* stop claim. The Court denied Idris's oral request for a mistrial on the record in court; instead, the

---

[1] Idris also levied an excessive force claim against the Defendants. The Court granted the Defendants' motion for summary judgment on that count prior to trial. *See* Dkt. No. 52.

Court issued a curative instruction. (Dkt. No. 88-2 at 15.) Because the Court employed three safeguards to extinguish any harm or prejudice caused by the Defendants' improper comment, and for the reasons that follow, the Court again denies Idris's motion for a mistrial (Dkt. No. 88).

## **BACKGROUND**

The Court briefly summarizes the relevant history of the case as it relates to Idris's mistrial motion. Idris originally brought three counts against the Defendants, all pursuant to Section 1983: (1) unreasonable seizure in the forms of an initial *Terry* stop and a false arrest; (2) excessive force in effectuating the arrest; and (3) malicious prosecution stemming from an encounter between the parties at O'Hare Airport. (Dkt. No. 1.) After the close of discovery, the Defendants moved for summary judgment on all of Idris's claims. (Dkt. No. 38.) Pertinent to Idris's instant motion, the Court granted summary judgment to the Defendants with respect to Idris's allegations that their initial *Terry* stop constituted an unlawful seizure. (Dkt. No. 52 at 9-11.) Specifically, the Court concluded that the undisputed facts that Idris (1) arrived to the baggage claim at O'Hare late, (2) looked behind as he walked from the claim area, (3) failed to respond to Moriarty initially, (4) walked towards the Chicago Transit Authority Blue Line stop, and (5) walked away from Moriarty, combined with Moriarty's years of experience and the location of the events, were sufficient to find the Defendants' initial stop of Idris reasonable as a matter of law. (*Id.* at 10-11.) Idris's claims for false arrest and malicious prosecution survived summary judgment, however, and made it to trial.

At trial, Idris testified that on January 3, 2012, he landed at the airport around 2:45 p.m. after a trip to Las Vegas, Nevada. He claimed his luggage from the Spirit Airline office because he was late to the baggage claim because he had stopped to charge his cell phone. After collecting his bags, Idris started to walk toward the Blue Line stop within O'Hare to head to

downtown Chicago. As he was within the pedway between the terminal and the Blue Line stop, the parties encountered each other. Moriarty testified that Idris had caught his attention because he suspected Idris had stolen luggage.

From this point on, the parties presented widely divergent versions of the events that transpired. Idris testified that the Defendants grabbed him, accused him of stealing his own luggage, and that he cooperated fully with the Defendants without getting excited. Both Moriarty and Conway testified that they did not initially grab Idris but only sought identification, which Idris refused to give. The Defendants testified that Idris became irate, threw his luggage down, raised his arms with his fists clenched, refused to produce identification, and relentlessly swore at them. Idris maintained that he was certainly upset by being detained, but that he did not throw his bags or act combative. After removing Idris from the moving walkway, the Defendants handcuffed him and arrested him for disorderly conduct. The criminal complaint stated that Idris "knowingly and intentionally became belligerent, throwing his bags to the ground while shouting profanities and waving his arms in the air with clenched fists, causing passengers and employees to back up in the pedestrian corridor and a crowd to gather in such an unreasonable manner as to alarm and disturb said passengers and employees, placing them in fear for their safety and provoke a breach of the peace." Idris maintained throughout trial that he never acted explosively when interacting with the Defendants and that the criminal complaint was not based on the actual events.

After the parties finished presenting their evidence but before putting on closing arguments, the Court and the parties discussed whether to instruct the jury that the Court had previously ruled that the Defendants' initial stop of Idris—thinking he had stolen luggage—was lawful. On December 3, 2014, the night before closing arguments, the Defendants for the first

time proposed an instruction telling the jury that the initial stop of Idris was lawful. The Court agreed with Idris that the instruction could improperly sway the jury. Later that night, the Court emailed the parties with the instruction concerning the initial stop that would be given to the jury. The instruction read: "Whether or not Defendants had the authority to initially stop Plaintiff is not for your consideration. Your job is to determine whether or not Defendants had probable cause to arrest Plaintiff for disorderly conduct." (Dkt. No. 88-1.)

Despite the Court's pronouncement that the jury would not be told that the Court had already ruled the initial stop lawful, during closing argument, defense counsel made the following statement:

> You've heard extensive testimony from the officers about why they did stop - - why they initially stopped plaintiff. But the Court has already ruled that the initial stop of plaintiff was lawful. And that is undisputed. So you're not here to decide whether or not it was - - they were - - it was proper for them to stop him for a baggage check or for you to - -

(Dkt. No. 88-2 at 13.) At this point, Idris objected to defense counsel's statement and the Court held a sidebar. Idris asked the Court for a mistrial, which the Court denied, or in the alternative, that the Court "instruct the jury that they're not going to be instructed that you ruled that way." (*Id.* at 14.) The Court gave that instruction after defense counsel finished her argument. (*Id.* at 26.) Idris's current motion challenges the same statement.

## DISCUSSION

A court may grant a new trial pursuant to Federal Rule of Civil Procedure 59(a) "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Idris argues that the Defendants' improper argument concerning the Court's summary judgment ruling on the Defendants' *Terry* stop during closing argument was prejudicial and deprived him of a fair trial because it effectively put the Court's stamp of

4

approval on the Defendants' conduct. "To obtain a new trial based on attorney misconduct, [Idris] must show both that the misconduct occurred and that it prejudiced [his] case." *Christmas v. City of Chicago*, 682 F.3d 632, 642 (7th Cir. 2012) (citing *Whiting v. Westray*, 294 F.3d 943, 944 (7th Cir. 2002)). When a motion for a new trial is based on improper remarks or argument by an attorney that were countered by the trial court with a curative instruction, courts presume that the jury followed that curative instruction. *See Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 446 (7th Cir. 2010). This presumption is rebuttable if there is an "overwhelming probability that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating" to the moving party. *United States v. Humphrey*, 34 F.3d 551, 556-57 (7th Cir. 1994) (citations omitted). Determining whether the presumption has been rebutted requires consideration of the "timeliness and effectiveness of the curative instruction as well as the record as a whole to ascertain whether any prejudice was alleviated." *Id.* at 557. Here, defense counsel's reference to the Court's summary judgment ruling on the Defendants' initial stop of Idris did not prejudice Idris to the extent necessary to warrant a new trial because the Court gave a proper, effective curative instruction to eliminate any harm.

### A. Idris's Reply Brief and Issue with Defense Counsel's Theme

As a preliminary matter, the Court addresses Idris's substantial broadening of the grounds for his motion in his reply brief. In his opening brief, Idris contested only defense counsel's comment when she "told the jury that this Court had already ruled that the 'initial stop' of Plaintiff was lawful." (Dkt. No. 88 at 1.) Idris specifically argued that there were "two points relevant to the motion," which included defense counsel's statement about the Court's *Terry* stop ruling and the curative instruction issued by the Court. (*Id.* at 2.) Despite this clear limitation in

his opening brief, in his reply brief, Idris argues that "[t]he entire first half of [defense counsel's] argument and the theme of it was improper and the subject of Plainitff's mistrial motion." (Dkt. No. 95 at 2.) Idris appears to take issue with part of defense counsel's argument characterizing Idris's case as involving a number of distractions and diversions from the pertinent issues. For the following reasons, Idris's expanded grounds for relief do not entitle him to a new trial.

First and foremost, Idris has waived these additional grounds for finding a mistrial by failing to present them in his opening brief. *See Billhartz v. C.I.R.*, No. 14-1216, 2015 WL 4480558, at *6 n.4 (7th Cir. July 23, 2015) ("it is well-settled that arguments first made in the reply brief are waived"); *Feldman v. C.I.R.*, 779 F.3d 448, 460 (7th Cir. 2015). Idris unequivocally premised his mistrial motion upon defense counsel's statement concerning the Court's summary judgment ruling within her closing argument originally, and his attempt to expand his argument to the "entire first half of [defense counsel's] argument" comes far too late.

Even if Idris had raised his enlarged argument encompassing half of defense counsel's closing argument in his opening brief, the argument would nevertheless be waived because he failed to object to defense counsel's characterization of his strategy as utilizing diversionary tactics during defense counsel's closing argument. *See Venson v. Altamirano*, 749 F.3d 641, 657 (7th Cir. 2014) (movant for new trial waives argument concerning misconduct by opposing counsel during closing argument where movant fails to make an objection at the time); *Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008) (plaintiffs who fail to object to statements made by a defense attorney during closing argument waive post-trial challenges to those statements). Idris made two objections during the Defendants' closing argument, one addressing defense counsel's personal opinion on protocol and procedure at O'Hare and the other regarding defense counsel's statement on the Court's summary judgment ruling. (Dkt. No. 88-2 at 4, 13.) Both were

sustained. Idris neglected to object to defense counsel's characterization of his case involving "sideshows" and "diversionary tactics" despite having the opportunity to do so. His failure to do so precludes him from challenging the statements now. Idris "should have voiced [his] objection . . . at the time the immoderate comments were made" and is now bound by his "decision to sit silent." *See Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 298 (7th Cir. 1985). Accordingly, he has further waived any post-trial challenge to those comments.

Waiver aside, there was nothing improper in defense counsel's line of argument that Idris was trying to pry the jury's attention away from the ultimate issue of whether the Defendants had probable cause to arrest Idris for disorderly conduct. "Closing arguments are the time in the trial process when counsel is given the opportunity to discuss more freely the weaknesses in his opponent's case and to highlight the strength of his own." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 731 (7th Cir. 1999). Defense counsel's argument that Idris wanted to distract the jury from looking at the pertinent facts in the case was tantamount to arguing that Idris's case was weak. It was permissible for defense counsel to argue that she believed that the issues surrounding the Defendants' initial stop of Idris and the criminal complaint charged against him need not be considered when determining whether the Defendants had probable cause to arrest Idris, and her use of the terms "sideshow" and "diversionary tactic" were not "so egregious as to constitute improper closing argument necessitating the grant of a new trial." *See id.* (words such as "trick" and "trick-pack," in reference to opposing party's case, did not prejudice movant to the extent necessary to garner a new trial based on attorney misconduct); *cf. Moylan v. Meadow Club, Inc.*, 979 F.2d 1246, 1250-51 (7th Cir. 1992) (defense counsel's closing remarks that plaintiff's claim was a "hold up" were not so egregious as to compel a new trial); *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments during

7

closing argument that defense counsel attempted to "trick" the jury by presenting "illusions" and "pulled out [] inconsistencies like a magician pulls rabbits out of his hats" were permissible means of argument). Noticeably absent from the Defendants' closing argument is any direct attack on Idris's counsel's motive. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013) (statements about counsel's motive are irrelevant to determining issues in dispute). Here, the Defendants' closing argument focused the jury on the relevant issue: whether there was probable cause to arrest. The Court therefore denies Idris's motion for a mistrial on this basis.

  **B. Defense Counsel's Statement that the Court Deemed the Initial Stop Lawful**

  Turning to the issue preserved for review, Idris contends that he is entitled to a new trial because the Defendants improperly told the jury that "the Court has already ruled that the initial stop of plaintiff was lawful." [2] (Dkt. No. 88-2 at 13.) The Court agrees that defense counsel's reference to the Court's summary judgment ruling on the Defendants' initial *Terry* stop of Idris was improper and in discord with the Court's ruling on the subject. Despite this transgression, the Court denies Idris's request for a mistrial because any misconduct did not prejudice Idris. *See Christmas*, 682 F.3d at 642 (new trial only warranted if misconduct prejudiced movant's case). "[C]omments made by attorneys during closing argument rarely rise to the level of reversible error." *Pickett*, 610 F.3d at 445; *see also Smith v. Hunt*, 707 F.3d 803, 812 (7th Cir. 2013) (the Seventh Circuit "has been loathe to find that improper comments made during closing argument rise to the level of reversible error"). This case does not present an exception to the general rule.

---

[2] Idris also contends that defense counsel improperly told the jury that they need not decide whether the Defendants has probable cause to arrest him for disorderly conduct. (Dkt. No. 88 at 8.) Having the benefit of the transcript of defense counsel's closing argument, it is clear that defense counsel simply misspoke while trying to get back on track after Idris objected. (Dkt. No. 88-2 at 13: "So you're not here to decide whether or not it was - - they were - - it was proper for them to stop him for a baggage check or for you to - - (objection sustained) - - decide whether the officers had probable cause to arrest him for disorderly conduct.") In the context of defense counsel's entire closing argument, the Court concludes that this statement was a mistake and harmless, particularly because defense counsel corrected her mistake when she told the jury that it would "have to decide if there is probable cause for the arrest" later in her argument, *id.* at 18, and the Court instructed the jury that it needed to decide whether the Defendants had probable cause to arrest Idris. (Dkt. No. 86 at 19-20.)

8

Here, defense counsel's comment regarding the Court's ruling on the Defendants' initial stop of Idris was both very brief [3] and promptly corrected by the Court by sustaining Idris's objection to the statement, holding a sidebar, and issuing tailored curative instructions. *See Smith*, 707 F.3d at 812 (improper closing argument only results in reversible error if the challenged statement was "plainly unwarranted and clearly injurious.") (quoting *Jones*, 188 F.3d at 730). Because the Court acted to cure any damage caused by the statement quickly and effectively, it denies Idris's motion for a mistrial. *See Collins v. Lochard*, No. 14-1915, 2015 WL 4127039, at *2 (7th Cir. July 9, 2015) (curative instructions often "suffice to cure any risk of prejudice").

Any harm that may have occurred because of defense counsel's comment—suggesting that the Court had already determined that the Defendants' initial stop of Idris was lawful—was undone when the Court employed three safeguards to eliminate any prejudice to Idris's case. First, the Court sustained Idris's objection to the statement and instructed the jury before, during, and after closing arguments that the lawyers' closing arguments are not evidence.[4] *See Smith*, 707 F.3d at 812 (improper remarks did not substantially prejudice plaintiff's trial where district court immediately sustained plaintiff's objection and issued a curative instruction); *Lincoln Elec.*, 188 F.3d at 732 ("Moreover, any potential prejudice to [plaintiff] by defense counsel's argument . . . was lessened considerably by the fact that the district court instructed the jury that statements and arguments made by counsel were not to be considered evidence and that the jury should base its verdict solely on the evidence admitted in the case. We have repeatedly found that jury instructions of this sort mitigate any prejudicial effect of potentially improper remarks

---

[3] Idris himself acknowledges that "the comments were brief." (Dkt. No. 88 at 6.)

[4] Before the parties began their closing arguments, the Court instructed the jury that "[t]he closing arguments, as I mentioned before, are not evidence." Directly after defense counsel finished her closing argument but before Idris began his rebuttal, the Court again said that defense counsel's argument "which I've told you is not evidence, but merely argument." (Dkt. No. 88-2 at 26.) Finally, after arguments were completed, the Court again instructed the jury that "[y]our first duty is to decide the facts from the evidence in this case . . . [t]he evidence consists of the testimony of the witnesses, the exhibits admitted into evidence, and stipulations . . . the lawyers' opening statements and their closing arguments are not evidence." (Dkt. No. 86 at 1-3.)

made by counsel . . . ."). By confining the jury's role to deciding the facts from the evidence admitted in the case and specifically instructing the jury that the lawyers' closing arguments are not evidence, the Court mitigated any harm that may have been caused by defense counsel's comment.

Second, directly after defense counsel concluded her closing argument, the Court explicitly admonished her conduct in presenting the statement that the Court had already ruled the initial stop lawful to the jury. Unambiguously, the Court said to the jury:

> Folks, before we move on to the rebuttal argument by Mr. Ksiazek, I do want to give you an instruction. Counsel just now spoke to say in her argument - - which I've told you is not evidence, but merely argument - - that I am going to instruct you that the initial stop of the plaintiff was lawful. That is not accurate. I am not going to instruct you that the initial stop was lawful. Instead, I'm going to instruct you that whether the defendants had the authority to initially stop the plaintiff is not for your consideration. It's not a concern of yours. Your job is to determine solely whether there was probable cause to arrest the plaintiff for disorderly conduct, and whether the officers then maliciously prosecuted him for disorderly conduct. That's your job.

(Dkt. No. 88-2 at 26.) This conspicuous admonishment of defense counsel further cured any harm potentially emanating from defense counsel's comment and eliminated the need for a new trial.[5] *See Durant v. Surety Homes Corp.*, 582 F.2d 1081, 1089 (7th Cir. 1978) (any prejudice caused by improper cross-examination question was eliminated by court's prompt admonishment of counsel and instruction for jury to disregard question). Because the Court promptly intervened and admonished defense counsel for her statement while simultaneously instructing the jury not

---

[5] Based on the Court's admonishment and direct instruction to the jury that defense counsel was incorrect, Idris's argument that the jury likely inferred that the Court rubber stamped the Defendants' conduct is meritless. Moreover, the Court did not need to deny defense counsel's statement that the Court had already ruled on the initial stop. Instructing the jury not to consider it whatsoever in its deliberations has the same practical effect without unnecessarily highlighting the event.

to consider whether the Defendants had authority to initially stop Idris, the chance of prejudice was eliminated and a new trial is therefore not required.

Third, the Court gave an additional curative instruction after Idris's rebuttal argument that largely mirrored the instruction given directly after defense counsel concluded her argument. The Court instructed the jury that "[w]hether or not Defendants had the authority to initially stop Plaintiff is not for your consideration. Your job is to determine whether or not Defendants had probable cause to arrest Plaintiff for disorderly conduct." (Dkt. No. 86 at 21.) This third precautionary measure again mitigated any harm caused by defense counsel's statement and obviated the need for a mistrial. *See United States v. Lawrence*, 788 F.3d 234, 244 (7th Cir. 2015) ("Curative instructions . . . have long been accepted in this circuit as a reasonable use of a district court's discretion to avoid a mistrial."). The Court presumes that the jury followed the instructions given. *See Wilson v. City of Chicago*, 758 F.3d 875, 885 (7th Cir. 2014) ("We presume that juries follow the instructions given them by the court"); *3M v. Pribyl*, 259 F.3d 587, 600 (7th Cir. 2001) ("[A]bsent evidence to the contrary, we assume that juries follow a court's instructions."). Here, there is no evidence that the jury was unable or unwilling to follow the numerous instructions given by the Court. The manifold and extensive steps taken by the Court to eliminate any prejudice from defense counsel's comment on the Court's ruling on the Defendants' initial stop of Idris sufficiently preserved the sanctity of the trial and a new trial is not warranted.

Idris's remaining arguments that the Court should have instructed the jury on the difference between an initial stop and a subsequent arrest and that the Court did not provide Idris with an opportunity to object to the curative instruction given in violation of Federal Rule of Civil Procedure 51(b) are meritless and may be addressed quickly. Idris contends that "[i]t is

more than likely that the jury had no idea what [defense counsel] meant by the 'initial stop' as opposed to the arrest of Plaintiff, and this was not cleared up by the Court's instruction to the jury. The jury received no instruction on what an 'arrest' is versus a 'brief detention.' " (Dkt. No. 88 at 11.) Disregarding Idris's failure to substantiate his conclusion that the jury was more than likely confused by defense counsel's statement, his argument is waived because he never sought to issue such an instruction during trial. *Cf. United States v. Mansoori*, 304 F.3d 635, 652 (7th Cir. 2002) (party cannot complain about trial court's omission of instruction where party did not remind the judge to issue it). Additionally, Idris's contention that he did not have a proper opportunity to object to the curative instruction the Court ultimately gave is factually inaccurate. The curative instruction had two components: (1) that the Court would not instruct the jury that the initial stop was lawful and (2) that whether the Defendants had the authority to initially stop Idris was not for the jury's consideration. The first component was explicitly requested by Idris at sidebar before the Court gave the instruction. *See* Dkt. No. 88-2 at 14 (Idris: ". . . the second thing I would ask is that you instruct the jury that they're not going to be instructed that you ruled that way.") The second component was, for all intents and purposes, identical to the instruction the Court emailed to the parties the night before closing arguments. *See* Dkt. No. 88-1. Accordingly, the Court dismisses Idris's challenge to the instruction and denies his motion for a mistrial.

## **CONCLUSION**

For the reasons stated herein, the Court denies Idris's motion for a mistrial (Dkt. No. 88.)

*/s/ Virginia M. Kendall*
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 8/31/2015